IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

PRISCILLA MARTINEZ,

    Plaintiff,

    v.

PROPERTIES OF THE SUMMIT JOINT VENTURE, R.L.L.P. d/b/a RE/MAX PROPERTIES OF THE SUMMIT, a Colorado Limited Liability Partnership; and

CONNIE ANGELL,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Priscilla Martinez, by and through counsel Felipe Bohnet-Gomez of RATHOD | MOHAMEDBHAI LLC, respectfully alleges for her Complaint and Jury Demand as follows:

### I. NATURE OF THE ACTION

This is an action under 42 U.S.C. § 1981 and C.R.S. § 24-34-402.5 to correct unlawful race and national origin discrimination and retaliation. As detailed below, Plaintiff alleges that Defendants RE/MAX Properties of the Summit, RLLP ("RPOTS") and Connie Angell discriminated against Plaintiff because of her race and/or national origin, and unlawfully terminated Plaintiff in retaliation when she complained about the discrimination, in violation of Section 1981. Further, this discrimination and retaliation violated Colorado law prohibiting the discharge of an employee for lawful activity occurring off the premises of an employer.

## II. **PARTIES, JURISDICTION, AND VENUE**

1. At all times relevant to this action, Plaintiff Priscilla Martinez was a resident of and domiciled in the State of Colorado.

2. At all relevant times, Properties of the Summit Joint Venture, doing business as RE/MAX Properties of the Summit ("RPOTS") is a Colorado limited liability partnership with a principal office address of 220 South Main Street P.O. Box 4600, Breckenridge, Colorado, 80424.

3. Plaintiff Priscilla Martinez worked as Office Administrator for RPOTS from February 13, 2019, until her unlawful termination on July 19, 2019.

4. At all relevant times, Connie Angell served as the business manager for RPOTS.

5. At all relevant times, Connie Angell, in her supervisory capacity as business manager, had the authority to discipline Ms. Martinez, which included possible termination.

6. Subject-matter jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This action is authorized and instituted under laws of the United States affecting commerce and civil rights, namely 42 U.S.C. §§ 1981 and §1981a.

7. Jurisdiction over Plaintiff's pendant claim under C.R.S. § 24-34-402.5 under 28 U.S.C. § 1367(a) because Plaintiff's claims arise from a common nucleus of operative fact.

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the employment practices alleged herein to be unlawful were committed within this district, and all of the defendants reside in this district.

## III. **RELATED PROCEDURAL HISTORY**

1. On January 10, 2020, Plaintiff Priscilla Martinez filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD"), alleging discriminatory harassment and discharge based on race, national origin, or ancestry, as well as retaliation for engaging in protected activity, in violation of the Colorado Anti-Discrimination Act, C.R.S. §§ 24-34-401, *et seq*.

2. In the course of its investigation, the CCRD reviewed the parties' written position statements and exhibits, and conducted interviews of Ms. Martinez, as well as Connie Angell, Lisa Angell, Jeff Angell, Tucker Stone, Cindy Nelson, and Sara Gambino.

3. On September 16, 2020, the CCRD issued a letter of determination regarding Ms. Martinez's Charge of Discrimination and found probable cause to believe Defendant RPOTS violated the Colorado Anti-Discrimination Act.

4. In particular, the CCRD's letter of determination informed Defendant RPOTS that the CCRD's investigation had found sufficient evidence to support Ms. Martinez's claims of discriminatory harassment, discriminatory discharge, and discriminatory retaliation.

5. Pursuant to C.R.S. § 24-34-306(2)(b)(II), the CCRD ordered the parties to engage in compulsory mediation, also known as conciliation.

6. This conciliation was held on October 1, 2020 and was unsuccessful.

7. The CCRD then forwarded its case file to the Colorado Civil Rights Commission, for a determination of hearing-worthiness pursuant to C.R.S. § 24-34-306(4).

8. On October 23, 2020, the Colorado Civil Rights Commission voted to set the case for hearing before an administrative law judge.

9. On January 4, 2021, the Colorado Civil Rights Commission served Defendant RPOTS with a Notice of Hearing and Formal Complaint, charging and alleging that Defendant RPOTS "violated the Colorado Anti-Discrimination Act when it unlawfully harassed and discharged [Ms. Martinez] based on her race . . . and when it retaliated against [Ms. Martinez] for engaging in protected activity by terminating her employment because she opposed race-based discriminatory harassment."

10. A hearing regarding the Commission's Formal Complaint is currently scheduled to commence on April 26, 2021 before the State of Colorado Office of Administrative Courts.

11. Pending determination in favor of Ms. Martinez in this administrative proceeding, Ms. Martinez intends to amend this Complaint to add a claim for compensatory damages pursuant to C.R.S. § 24-34-405(8)(b).

## IV. <u>FACTUAL ALLEGATIONS</u>
### BACKGROUND

12. Ms. Martinez is Hispanic/Latinx and of Mexican descent.

13. Ms. Martinez moved to Summit County, Colorado on or about November 2014, to provide a healthier environment for her daughter, who suffers from mastocytosis—a rare immune disorder causing severe allergic reactions to heat and humidity. The high altitude and dry air greatly alleviated her daughter's symptoms, and permitted her to lead a more normal life.

14. Defendant RPOTS is a real estate brokerage operating in Summit County, with offices in Frisco and in Breckenridge.

15. At all relevant times, Lisa Angell served as the managing broker for RPOTS's Breckenridge office.

16. At all relevant times, Jeff Angell served as broker/owner for RPOTS.

17. At all relevant times, Tucker Stone served as a recruiter for RPOTS.

18. At all relevant times, Cindy Nelson served as a broker associate for RPOTS.

19. At all relevant times, Sara Gambino served as a broker associate for RPOTS.

20. Ms. Martinez began working at RPOTS on February 13, 2019 as the Office Administrator for the Breckenridge Office.

21. During this time, Ms. Martinez successfully managed her job as RPOTS's Office Administrator, as well as several other positions; (1) as a staff translator at the Summit County School District; (2) as an office administrator at a massage parlor; and (3) as a freelance photographer.

22. RPOTS's performance review of Ms. Martinez, covering February 19, 2019 to May 19, 2019, evaluated her work to be both "good" or "satisfactory" in all areas.

### MS. MARTINEZ WAS SUBJECT TO DISCRIMINATION ON THE BASIS OF HER RACE AND NATIONAL ORIGIN

23. After learning of Ms. Martinez's freelance photography business, RPOTS agents Cindy Nelson and Sara Gambino approached Ms. Martinez and asked her to take photos of them for work-related marketing purposes.

24. Ms. Martinez accepted the photography job.

25. Ms. Martinez requested that Mses. Nelson and Gambino pay her a deposit through Venmo, a widely-used mobile payment service.

26. Because Ms. Martinez requested payment through Venmo, Ms. Nelson inferred that Ms. Martinez was unable to obtain a bank account.

27. The photoshoot was conducted on July 11, 2019.

28. On July 12, 2019, Ms. Martinez complained to Connie Angell regarding Mses. Nelson and Gambino's increasingly hostile behavior toward Ms. Martinez at work and stated that it was making her sick to her stomach.

29. Ms. Angell replied, stating that Ms. Martinez should let Mses. Nelson and Gambino's behavior roll off her back.

30. Ms. Nelson was aware of rumors that ICE raids would take place in Summit County on or around July 15, 2019.

31. Although the raids did not come to fruition, many individuals in Summit County who were concerned about their immigration status did not go to work on or around July 15, 2019.

32. Ms. Martinez did not attend work on or around July 15, 2019, for an unrelated reason.

33. Ms. Nelson noticed that Martinez did not attend work on this day, and inferred that Ms. Martinez was absent because she was of Mexican descent and an undocumented immigrant.

34. On July 18, 2019, Ms. Nelson used her RPOTS email account to send Ms. Martinez an email expressing dissatisfaction with outcome of the photoshoot to Ms. Martinez's RPOTS email address.

35. Ms. Nelson's email also threatened Ms. Martinez with litigation regarding the photos, provided she did not comply with their requests.

36. Ms. Nelson's email demanded that Ms. Martinez provide an "[i]nvoice for work provided to the Nelson and Gambino Team."

37. Ms. Nelson's email demanded that Ms. Martinez state whether she paid taxes on the income from her photography business, and what amount.

38. Ms. Nelson also demanded to know if the funds from Ms. Martinez's Venmo account went to her business account or were "commingling…with [her] personal account."

39. Ms. Nelson's email also threatened Ms. Martinez, stating they needed to receive all requested documentation and "reach a settlement" "by the close of today" or they Ms. Nelson would pursue litigation.

40. Ms. Nelson's email further stated that Ms. Nelson would be able to collect treble damages and attorney's fees, should they proceed to litigation.

41. That same day, Ms. Martinez consulted with Lisa Angell regarding Ms. Nelson's threats, and refunded the full amount of the photography session to Mses. Nelson and Gambino.

42. While at work in the RPOTS office on July 19, 2019, the day after Ms. Nelson had threatened to sue Ms. Martinez and insinuated she was engaged in tax fraud, Ms. Martinez overheard Ms. Nelson complaining that Ms. Martinez was being "cold" towards the Nelsons and Gambinos.

43. Ms. Martinez then heard Ms. Nelson tell Ms. Gambino that "someone has to go."

44. Ms. Nelson then approached Ms. Martinez asking, "Priscilla, are you legal?"

45. Ms. Martinez, stunned, responded "I'm sorry, what?"

46. Ms. Nelson then repeated herself, "Yeah, are you here legally?"

47. Ms. Martinez again responded with "I'm sorry, what?"

48. Ms. Nelson repeated herself for a third time.

49. Ms. Martinez found another RPOTS employee, Tucker Stone, and brought him over to Ms. Nelson, asking Ms. Nelson to repeat her question.

50. Ms. Nelson repeated herself, again questioning Ms. Martinez's immigration status.

**MS. MARTINEZ COMPLAINED TO RPOTS ABOUT THE DISCRIMINATION**

51. Immediately after Ms. Nelson's questioning, Ms. Martinez emailed her supervisor, Connie Angell, RPOTS Branch Manager Lisa Angell, and Tucker Stone to complain about Ms. Nelson's conduct.

52. Ms. Martinez never received a response to her email.

53. Ms. Martinez clocked out for her lunch break and left the office.

54. While on her lunch break, Ms. Martinez, still in disbelief, posted to her personal Facebook account at approximately 12:04 p.m. The post said "Nothing like being asked by someone at your office, if you're here legally, as an intimidation and harassment tactic. WTF. I'm literally shaking from the emotion. I've NEVER been asked this. Oh. And yes. I am here legally. B*tch."

55. While still on her lunch break, Ms. Martinez set the privacy settings on her Facebook account so that only she could see her 12:04 p.m. post.

56. Ms. Martinez then posted: "I took it down for now, until I figure out my next step. You all are amazing."

57. After returning to the office from her lunch break, Ms. Martinez texted Connie Angell asking to take the rest of the day off.

58. Connie Angell responded permitting the request, stating that "Tucker can cover."

59. That same day, Mr. Stone called Ms. Angell to discuss Ms. Nelson's conduct.

60. Later that day, Cindy Angell texted Ms. Martinez informing her that Branch Manager Lisa Angell planned to have a meeting with Mses. Nelson and Gambino.

61. On July 20, 2019, Ms. Martinez responded to this text with an email to Cindy Angell stating, she felt "disrespected and humiliated" and that "it has become a hostile work environment."

62. Ms. Martinez further explained in the email that because of this hostility she felt uncomfortable attending the meeting with Mses. Nelson and Gambino and would prefer not to.

63. Additionally, Ms. Martinez stated in the email that she would like to speak further with either Connie Angell or Lisa Angell to work collectively on how to move forward with a solution acceptable to all parties.

64. Connie Angell responded the same day asking Ms. Martinez to meet with her at RPOTS's Frisco Office that weekend.

**RPOTS DISCHARGED MS. MARTINEZ BECAUSE SHE COMPLAINED ABOUT THE WORKPLACE DISCRIMINATION**

65. Ms. Martinez agreed to meet at 3 p.m. on July 20, 2019.

66. Upon arriving at the Frisco Office, believing she was meeting solely with Connie Angell, Ms. Martinez walked in to find Connie Angell, Lisa Angell, and Jeff Angell waiting for her.

67. Rather than addressing Ms. Nelson's conduct and the hostile work environment, as she had expected, it became clear to Ms. Martinez that Connie Angell and RPOTS intended to terminate her instead.

68. Connie Angell, Lisa Angell, and Jeff Angell repeatedly berated Ms. Martinez for complaining about Ms. Nelson's conduct.

69. Connie Angell, Lisa Angell, and Jeff Angell further failed to address the content of Ms. Nelson's discriminatory acts, whether Ms. Nelson would be disciplined for her harassing conduct, or the hostile work environment Ms. Nelson had created.

70. Connie Angell told Ms. Martinez that, had the Facebook post never been made, RPOTS would not have terminated Ms. Martinez's employment.

71. Connie Angell informed Ms. Martinez that had she not complained to RPOTS about the discrimination, then Ms. Martinez would not be terminated, and RPOTS would have "taken a different approach."

72. Connie Angell further stated that Ms. Martinez's complaints "changed everything."

73. Jeff Angell stated to Ms. Martinez that other people had talked about seeking legal action against RPOTS because of Ms. Martinez's Facebook post.

74. Lisa Angell told Ms. Martinez that Cindy Nelson was going to be seeking legal counsel regarding Ms. Martinez's Facebook post.

75. Lisa Angell informed Ms. Martinez her Facebook post was "trouble," and allowing Ms. Martinez to keep her job would create "trouble" for RPOTS.

76. Jeff Angell admitted to Ms. Martinez that her Facebook post reporting the discrimination at her workplace caused Connie Angell to subject her to harsher treatment in response.

77. Connie Angell gave Ms. Martinez an envelope containing her final paycheck at the end of the meeting.

## VI. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1981**
**Discrimination and Harassment Under Section 1981**
**(Against All Defendants)**

78. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

79. Ms. Martinez is Hispanic/Latinx and of Mexican descent.

80. Ms. Martinez was subjected to offensive race-based harassment that was sufficiently severe or pervasive as to alter the terms and conditions of employment.

81. Defendants were aware of the harassment because Ms. Martinez complained about it.

82. Defendants failed to take reasonable measures to prevent and promptly remedy the racially and ethnically hostile work environment.

83. Defendants failed to take corrective actions appropriate to remedy the racially hostile work environment.

84. Indeed, rather than take such reasonable measures or corrective actions, Defendants chose instead to terminate Ms. Martinez's employment.

85. As a result of Defendants' conduct, Ms. Martinez was subjected to a hostile and abusive workplace.

86. Defendant Angell knew of, and acquiesced to, the discriminatory and harassing conduct described herein.

87. Defendant Angell was personally involved in directing Defendant RPOTS's termination of Ms. Martinez.

88. No white employee was subjected to the unlawful employment practices complained of above.

89. But for Ms. Martinez's race, she would not have been subjected to the unlawful employment practices complained of above.

90. The effect of the practices complained of in the forgoing paragraphs has been to deprive Ms. Martinez of her right to make and enforce contracts, and the enjoyment of the benefits of employment, and has otherwise adversely affected her status as an employee in violation of 42 U.S.C. § 1981.

91. The unlawful practices described above were intentional.

92. The unlawful employment practices complained of above were done with malice or with reckless indifference to Ms. Martinez's federally protected rights.

93. As a direct result Defendants' actions, Ms. Martinez has suffered significant injuries, damages, and losses to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1981**
**Retaliation Under Section 1981**
**(Against All Defendants)**

94. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

95. Plaintiff opposed race-based discrimination and harassment by an RPOTS agent that she reasonably believed was unlawful under 42 U.S.C. § 1981.

96. Ms. Martinez reported the racial harassment and discrimination to Defendants and their managers, supervisors, and other employees.

97. Ms. Martinez additionally complained of the racial harassment and discrimination in a Facebook post, which Defendants became aware of and believed to be directed at them.

98. Defendants intentionally and unlawfully retaliated against Ms. Martinez for reporting the discrimination that she had faced in the workplace by terminating her employment.

99. But for Ms. Martinez's protected complaints of race-based discrimination and harassment, she would not have been subjected to the unlawful employment practices complained of above.

100. The effect of the practices complained of in the forgoing paragraphs has been to deprive Ms. Martinez of her right to make and enforce contracts, and the enjoyment of the benefits of employment, and has otherwise adversely affected her status as an employee in violation of 42 U.S.C. § 1981.

101. The unlawful practices described above were intentional.

102. The unlawful employment practices complained of above were done with malice or with reckless indifference to Ms. Martinez's federally protected rights.

103. As a direct result Defendants' actions, Ms. Martinez has suffered significant injuries, damages, and losses to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**C.R.S. § 24-34-402.5**
**Unlawful Prohibition of Legal Activities**
**(Against Defendant RPOTS)**

104. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

105. When Ms. Martinez posted to her personal Facebook account while out on her lunch break, she engaged in a lawful activity off the premises of the employer during nonworking hours.'

106. RPOTS terminated Ms. Martinez's employment due to her Facebook post, in violation of C.R.S. § 24-34-402.5.

107. As a direct result RPOTS's actions, Ms. Martinez has suffered significant injuries, damages, and losses to be determined at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Priscilla Martinez requests the Court enter judgment for the following relief:

a. All declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. The maximum tax-offset permitted by law;

      h.      Attorneys' fees and costs; and

      i.      Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 26th day of March 2021

      RATHOD ǀ MOHAMEDBHAI LLC

      s/ Felipe Bohnet-Gomez
      Felipe Bohnet-Gomez
      2701 Lawrence Street, Suite 100
      Denver, CO 80205
      (303) 578-4400
      fbg@rmlawyers.com

      *Counsel for Plaintiff Priscilla Martinez*